TAYLOR *et al. v.* FRANKLIN SAV. BANK.

*(Circuit Court, N. D. Illinois. August 10, 1891.)*

**TRUSTS—INFANT BENEFICIARIES—FORECLOSURE—BILL OF REVIEW.**

Land was conveyed to a trustee by deed of trust, which provided that no lien, incumbrance, or charge should be created. The record of such trust deed having been destroyed by fire, a decree was entered in a proceeding under the burnt record act, establishing the trust deed without the provision aforesaid, but with a clause authorizing the trustee to create liens. After entry of this decree the trustee gave a mortgage and allowed a mechanic's lien to be created, under which the land was sold. Some of the *cestuis qui trustent* who were infants when the decrees of foreclosure and the decree restoring the trust deed were rendered, but who had appeared therein by guardian *ad litem,* filed a bill to review the foreclosure suits. *Held* that, as to them, the mortgages and the mechanic's lien were invalid, since the record of the trust deed, though destroyed, gave the mortgagee and lien holder notice of the inability of the trustee to incumber the property.

In Equity.

*R. B. Kendall* and *Mr. Pope,* for complainants.

*Swift, Campbell & Jones,* for Franklin Sav. Bank.

BLODGETT, District Judge. This is a bill to review, reverse, and set aside a decree of foreclosure, entered in this court on the 30th of April, 1880, under which defendant claims title to lots, 1, 4, and 5 of the subdivision of lot 4, in block 16, in Bushnell's addition to the city of Chicago; and also to set aside a sale made July 15, 1881, under a decree for a mechanic's lien, in favor of Gilsdorf and others, entered in the superior court of Cook county July 20, 1874. The original bill of review was filed by Robert C., Katharine, and Margaret Taylor, children of Frank C. and Louisa Taylor. And the cross bill was filed by Frank C. Taylor, Jr., and Maria Louisa Taylor, Jr., Josephine S. Taylor, and Alexander Taylor, infants, and older children of Frank C. and Louisa Taylor, Sr. The facts, as they appear from the proof, and which are not disputed, are that on the 13th of June, 1871, Maria Louisa Taylor, being seised in fee of all of lot 4, in block 16, Bushnell's addition to Chicago, joined with her husband, Frank C. Taylor, in the execution of a deed of said premises to Ira Scott, to hold upon certain trusts in the deed set forth, which trusts, so far as it is necessary to state them for the purposes of this case, were that the property was to be held for the benefit of Mrs. Taylor and the children of the marriage between Frank C. Taylor, her husband, and herself, except that, in the event of the death of Mrs. Taylor, and of the children, before the youngest child had reached the age of 21 years, Mr. Taylor or his heirs should become entitled to the remainder of the estate. The deed of trust contained an express provision "that no lien, incumbrance, or charge shall be created on said premises," and, although there was a provision in the trust deed that the trustee might sell some portion of the premises for the purpose of improving that which was unsold, yet that provision was so guarded as to prohibit the creation of any lien, incumbrance, or charge upon the unsold portion of said premises. At the time the deed was made there

was a house upon the premises, which was occupied by Mr. and Mrs. Taylor as their home, this house covering only a comparatively small part of the lot. When this trust was created, three children had been born to Mr. and Mrs. Taylor, and four have since been born, and this bill was filed by the three youngest of the seven children, the three oldest having arrived at lawful age since this bill was filed, and the other four are still minors. By the great fire in the city of Chicago of October 8 and 9, 1871, the house upon the trust premises was destroyed, and the public records of deeds of land titles in the city were also destroyed, and the trust deed itself was for several years supposed to have been destroyed by the same fire, although it had been duly recorded within a few days after its date. In January, 1872, Mr. Taylor borrowed the sum of $30,000 from the Franklin Savings Bank, the principal defendant in this case, for which he gave his own note, payable one year after date, and to secure the payment of that note he and his wife executed to Edward Brown a trust deed upon the whole of said lot 4 in block 16. The money so borrowed by Taylor was used in building upon the trust premises a block of five dwelling houses, which cost about $53,-700. In January, 1873, Taylor and his wife filed a petition in the superior court of Cook county under the provisions of what is known as the "Burnt Records Act" of this state, alleging the making and recording of the deed of trust, the destruction of the records, and the loss of the deed itself, and praying an establishment and confirmation of the trust deed and its terms, as set out in said petition. And such proceedings were had under this petition that on the 20th of March, 1873, a decree was entered establishing and confirming what was found from the proof to be a substantial copy of the trust deed, but in fact omitting the clause which provided that no lien, incumbrance, or charge should be created on the premises, and containing in place of that clause a clause that authorized the trustee to make liens for the purpose of rebuilding, etc. After the entry of this decree, Scott, the trustee, and Taylor and wife, made a subdivision and plat of said lot 4, dividing the same into five sublots, numbered from 1 to 5, inclusive. On the 22d of July, 1873, Mr. Scott declined to act longer as trustee, and Taylor and wife filed a bill in the superior court of Cook county for the appointment of another trustee, and asked that such new trustee be empowered to make a loan of money sufficient for the fair value and cost of the improvements made on said lots, and a decree was on the 19th of August, 1873, entered, appointing Charles H. Mullikin trustee, as successor to Mr. Scott, and authorizing him to make a loan to pay to Mr. and Mrs. Taylor the cost of the improvements made on the lots, not to exceed $53,700. Mr. Mullikin accepted the trust, and on the 23d of August made four trust deeds, covering sublots 1, 2, 4, and 5 of said subdivision, to Francis S. Howe, trustee, to secure the payment of four notes of $9,000 each, given by Mullikin and Mr. and Mrs. Taylor to the Franklin Savings Bank; and on the 1st of January, 1874, Mullikin, the trustee, and Mr. and Mrs. Taylor joined in the execution of another trust deed to Francis S. Howe, to secure the individ-

ual note of Taylor to the Franklin Savings Bank for $2,875. The proceeds of the four first-mentioned trust deeds were used to take up the $30,000 loan made by Taylor from the bank in June, 1872, and the last-mentioned trust deed for $2,875 was to secure a personal indebtedness of Taylor's to the bank, not growing, as the proof shows, out of the rebuilding. In September, 1873, a petition for a mechanic's lien was filed by Henry Gilsdorf for labor and materials used in the construction of the block of new buildings in which petition other contractors intervened. This case came to hearing in July, 1874, and resulted in a decree establishing liens on the premises in favor of Gilsdorf and those who had intervened with him, which decree was afterwards affirmed by the supreme court of this state at the September term, 1874. 74 Ill. 354. In June, 1876, the Franklin Savings Bank filed in this court a bill to foreclose the four trust deeds of August 23, 1873, which, after default of some of the adult defendants, and answers by the guardian *ad litem* of the infant defendants, was in May, 1877, referred to a master to take proofs and report. In June, 1877, the original deed of trust to Scott was found, and very soon thereafter bills of review were filed in the case under the burnt records act, and in the suit brought for the appointment of a new trustee in place of Scott, and in which the decree appointed Mullikin trustee, and authorized him to make the loan to pay for building the five houses, which bills of review resulted in decrees setting aside the former decrees in those cases, but the decree in the case under which Mullikin was appointed trustee contained a clause that nothing therein ordered or contained should deprive the Franklin Savings Bank, or Howe, the trustee in the said trust deeds, of any interest they, or either of them, might have in the trust estate, the claims of the bank and said Howe not having been heard or adjudicated.

After the original trust deed was found, the bank filed a supplemental bill in the foreclosure case, which was answered. Before a report was made by the master, terms of settlement or compromise were made between the bank and the guardian *ad litem* of the infant defendants then in court, which included all the children then born, and all the children of the parents, except Margaret, the youngest. By this compromise the children were to have one of the sublots, and the house thereon, free and clear of all incumbrance. On the 29th of April, 1880, a decree of foreclosure was entered in the foreclosure suit in pursuance of the terms of this agreement, which, by its terms, was a foreclosure of the four trust deeds on sublots 1, 2, 4, and 5, respectively, and of the trust deed securing the $2,875 (Taylor's individual debt) on the whole four lots, and a sale was directed to be made by one of the masters of the court of the sublots 1, 2, 4, and 5, to pay the amount found due by said decree on the said respective trust deeds; the lien of the several trust deeds on the premises covered by them respectively being found by the decree to be subject to the prior mechanic's lien established by the decree in the *Gilsdorf Case.* A sale was made under this decree on the 16th of June, 1880, and each house and lot sold to the bank, and certificates of purchase given by the master to the bank as such purchaser; and afterwards, to

consummate the settlement made with the guardian *ad litem* of the infant children, the certificate of purchase for lot 2 at such master's sale was assigned to the guardian *ad litem*, and by him assigned to the six children then born, and a deed was in due time made to them by the master, and a deed was also made to the bank of lots 1, 4, and 5. After the affirmance by the supreme court of the decree in the mechanic's lien case, the bank purchased the decree in that case, and was the owner of such decree at the time of the entry of the decree in the foreclosure case, and at the time of the alleged compromise and settlement; and on the 15th of July, 1881, a sale was made under the mechanic's lien decrees, and the defendant, H. H. Thomas, who was then the president of the bank, became the purchaser of the three sublots 1, 4, and 5, and it is admitted that this purchase was made by Mr. Thomas for the bank, and that he now holds the title solely for the bank, and has no individual interest therein. It also appears that the three oldest children were made defendants to the bill for the restoration of the deed of trust under the burnt records act, and appeared and answered by guardian *ad litem;* that the four oldest children were made parties to and appeared and answered by guardian *ad litem* in the bill for the appointment of a new trustee; and that, under the mechanic's lien suit, the four oldest children were made parties defendant, and appeared and answered by guardian *ad litem.* But the supreme court, in the suit brought by Julia S. Taylor against the bank to set aside the decree in the mechanic's lien suit, as far as it affected lot 3 in said subdivision, found that there was no service upon the infant defendants in the mechanic's lien case. It also appears that the youngest child, Margaret, who is one of the original complainants in this case, was born after the entry of the decree in the foreclosure case. It also appears that all the seven children born of the marriage of Mr. and Mrs. Taylor, who are parties to the original and cross bills in this case, were minors at the time the original and cross bills were filed.

The contention on the part of the complainants is that all the four trust deeds given by Mullikin, trustee, with the consent of Mr. and Mrs. Taylor, on the four houses and lots, and also the decree in the mechanic's lien case, are all void and inoperative as against the complainants and cross complainants, under the clause in the deed of trust to Scott, which prohibited the creation of any lien, incumbrance, or charge on the trust premises; that they are not bound by the decree in the foreclosure case, because the decree was by consent, and they were not competent to give such consent, and that the decree in the mechanic's lien case did not bind the infant defendants therein, because there was no service of process on them, and also because such decree was obtained by imposing upon the courts the false deed established by the decree in the burnt records act; of all which, and of the true terms of the genuine trust deed, it is claimed the petitioners in the mechanic's lien case, and the bank and its president, Mr. Thomas, were bound to take notice. While on the part of the defendant, the Franklin Savings Bank, and Mr. Thomas, it is contended that the three oldest of the minor children were made

parties to the mechanic's lien case, and appeared and answered by guardian *ad litem*, and are bound by said decree, and that the proof does not show that they were not served with process in the case, and that the children so brought into the mechanic's lien case were of the same class, as to their rights and interest in the property, as the after-born children, and that the after-born children were properly and sufficiently represented in the mechanic's lien suit by their older brothers and sisters, and that they are therefore bound by such representation of their class; that the three oldest children were parties to the proceeding under the burnt records act, which established, by the decree of the court, the power on the part of the trustees to loan money, and give the securities in question; that all the children of Frank C. and Maria L. Taylor were made parties in the foreclosure suit, except Margaret, who was born after the entry of the decree in said case, and that they appeared in said case by their guardian *ad litem*, and answered; and the decree in said case is binding on them, and each of them, and on the after-born child, Margaret, as she was represented in her class.

I do not deem it necessary to go into an elaborate discussion of the questions of law arising upon the facts, which have been so ably presented in the briefs of counsel. It is undoubtedly settled beyond question by the decisions of the supreme court of Illinois, which controls this court in all cases involving rights to real estate in this state, that the record of the deed of trust to Mr. Scott was notice to all persons dealing with respect to the trust property that no valid lien could be created upon that property either by the trustee, or any of the beneficiaries under the trust, and that the destruction of the record of the deed of trust did not change the rule as to its effect as notice. *Shannon* v. *Hall*, 72 Ill. 355, 85 Ill. 473; *Gammon* v. *Hodges*, 73 Ill. 140; *Steele* v. *Boone*, 75 Ill. 457; *Heaton* v. *Prather*, 84 Ill. 330; *Curyea* v. *Berry*, Id. 600; *Bank* v. *Taylor*, 131 Ill. 386, 23 N. E. 397. It is also clear from the admitted facts that the loan of $30,000, made by the bank to Frank C. Taylor in January, 1872, was made upon the credit of Taylor alone, and not upon any valid security upon the trust property; that the four trust deeds, securing $9,000 each, and the $2,875 trust deed, made by Mullikin, trustee, with the consent of Mr. and Mrs. Taylor, did not create a valid lien upon the trust property, as such transaction would have been in express contravention of the deed of trust under which Mullikin held the property. It is insisted on the part of the defendants that the decrees in the burnt records act case, and in the case appointing a new trustee, fully empowered the making of the five trust deeds involved in the foreclosure suit; that four of the children were parties to those suits, and bound by the terms thereof, and the other unborn children were bound by representation, and that those decrees remained in full force at the time such trust deeds were made. It may be, and probably is, true that, so long as those decrees, as well as the decree in the mechanic's lien case, are allowed to stand, they are binding by their terms upon the infant defendants as well as upon the adult parties; but the essential question is, can these infants attack those decrees, and have them set aside as

against parties who acted under them while they were in force? I consider the law to be well settled that the infants can, by an original bill in the nature of a bill of review, attack any decree entered against them during their infancy, and have it set aside for fraud or error of fact. Daniell, Ch. Pr. 169, 170; *Rogers* v. *Smith*, 4 Pa. St. 93; *Mills* v. *Dennis*, 3 Johns. Ch. 367; *Massie* v. *Donaldson*, 8 Ohio, 377; *Mathes* v. *Dobschuetz*, 72 Ill. 438; *Gooch* v. *Green*, 102 Ill. 509; *Lloyd* v. *Kirkwood*, 112 Ill. 337; *Kuchenbeiser* v. *Beckert*, 41 Ill. 172; *Kingsbury* v. *Buckner*, 134 U. S. 650, 10 Sup. Ct. Rep. 638. It is also well established, I think, by the authorities, that any consenting decree entered against a minor is not binding, and can be attacked by original bill for the purpose of setting it aside; and in support of this practice no other authority need be cited than that of *Kingsbury* v. *Buckner*, above cited. Assuming, as I do, the right of these minors to attack this bill of foreclosure by their bill, I think the court must now assume that, had all the facts touching the validity of the securities involved in that suit been presented to the court, the court must have held that the securities sought to be foreclosed and enforced in that proceeding were invalid, and have dismissed that suit for want of equity as against the infant defendants; and, as the court was prevented from doing so, and was led into making an inequitable decree by the unauthorized agreement of the guardian *ad litem*, it will in this suit, now brought by the minors themselves, enter such decree as should have been entered in the original foreclosure case. As to the Gilsdorf decree, and the sale under it, I can see no reason why it is not properly the subject of attack by this bill. Undoubtedly, at the time that decree was rendered, the court properly assumed that it was justified by the deed of trust, as restored by the decree of March 29, 1873, under the burnt records act, but that decree was based upon a most palpable error of fact, of which the bank and its president were charged with notice, and it seems to me the right of these infants to set aside that decree, and all that has been done under it, is palpable. To set aside these sales under the foreclosure and mechanic's lien decrees will, without doubt, work a hardship upon the bank, that has invested a large sum of money on the faith that the four $9,000 mortgages were valid; but the court cannot escape the conclusion that there was ample constructive notice that the trustees had no power to make those mortgages, as well as that no valid mechanic's lien could be created on the trust estate, and to hold that these incumbrances are valid as against these children would make a precedent for defeating the rights of many more minor children.